UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
APR 1 8 2012
U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) |
| | ) No. |
| vs. | ) |
| | ) 4:12CR00159ERW |
| JAY DUNLAP, | ) |
| | ) |
| Defendant. | ) |

## INDICTMENT

### COUNT ONE

The Grand Jury charges that:

*Introduction*

1. At all times relevant to this matter, Defendant Jay Dunlap ("Dunlap") was a businessman residing in the St. Louis, Missouri area.

2. In 2008, Dunlap was interested in investing in real estate but he had no money to invest and had poor credit so that he would be an unfavorable candidate for seeking credit in his own name.

3. In 2008, Dunlap addressed his need for capital by causing an investor to agree to put up the money to purchase investment property including a property known as 6169 Westminster (the "Westminster property") which is located in the City of St. Louis within the Eastern District of Missouri. It was Dunlap's agreement with his investor that he would supervise the improvements to be performed at the Westminster property and the investor would provide approximately $270,000 in capital to acquire the Westminster property and pay for the

needed improvements. It was further part of the agreement for Dunlap and the investor to split any profits after the Wesminster property was resold of "flipped."

4. After the Westminster property had been acquired, Dunlap sought to liquidate some of the equity built up through the investor's contributions. Under his agreement with the investor, Dunlap was not entitled to do so. Therefore, Dunlap agreed with two other individuals, a married couple whose initials are R.S. and A.S., to help him liquidate some equity in the Westminster property without the investor's knowledge.

5. Dunlap set up R.S. and A.S. as owners of a Missouri Limited Liability Company called Banccommercial, LLC ("Banccommercial"). Unbeknownst to the investor, the Westminster property had been titled in the name of Banccommercial from the time it was first acquired with the investor's funds. Then, throughout 2009, Dunlap directed R.S. and A.S. to take out a succession of loans in the name of Banccommercial. The proceeds of these loans were then transferred by means of interstate wire communications into a financial account at PNC Bank which Dunlap controlled. With respect to one loan, the proceeds first were directed to an U.S. Bank account in the name of R.S. and A.S. before ultimately making their way to the aforementioned PNC Bank account.

6. Both as the owners or Banccommercial, LLC and as borrowers on the aforementioned loans, R.S. and A.S. were straw parties. That is, they contributed no capital or management services to Banccommercial. Further, they had no intention to either benefit from the proceeds of Banccommercial's borrowing or make the required payments called for by the loans. They owned Banccommercial and interacted with financial institutions in name only. In all practical respects, Dunlap controlled Banccommercial and handled its financial transactions and obligations. Dunlap used R.S. and A.S. to hide his control and involvement, and accordingly

his poor credit history, from the lenders.

7. Once the proceeds of the loans made to Banccommercial made their way into the PNC Bank account Dunlap controlled, Dunlap used the proceeds to pay bar tabs, purchase an automobile and pay other bills. Dunlap also allowed R.S. and A.S. to pay $30,000 of their personal credit card bills as compensation for allowing Dunlap to use them as straw borrowers.

8. As a result of the foregoing scheme, all equity established in the Westminster property through the investor's capital contributions have been taken out by Dunlap for his benefit and that of R.S. and A.S. Moreover, the lending institutions were deceived as to the true identity and creditworthiness of Banccommercial during the process of underwriting the aforementioned loans.

*Offense Conduct*

9. On or about November 21, 2008, in furtherance of the foregoing scheme to defraud and to obtain money and property, the defendant,

### JAY DUNLAP,

did transmit and cause to be transmitted in interstate commerce writings, signs, signals pictures and sounds by means of wire communication in furtherance and execution of said scheme, to wit: the interstate wiring of $129,706 to acquire the Westminster property.

In violation of Title 18, United States Code Section 1343.

### COUNT II

The Grand Jury further charges that:

1. The allegations contained in Count I are hereby reallaged and incorporated by reference.

2. On or about April 29, 2009, in furtherance of the foregoing scheme to defraud and

to obtain money and property, the defendant,

## JAY DUNLAP,

did transmit and cause to be transmitted in interstate commerce writings, signs, signals pictures and sounds by means of wire communication in furtherance and execution of said scheme, to wit: the interstate wiring of $48,631 in proceeds from a loan secured by the Westminster property to an account controlled by defendant at PNC bank.

In violation of Title 18, United States Code Section 1343.

## COUNT III

The Grand Jury further charges that:

1. The allegations contained in Counts I and II are hereby reallaged and incorporated by reference.

2. On or about September 14, 2009, in furtherance of the foregoing scheme to defraud and to obtain money and property, the defendant,

## JAY DUNLAP,

did transmit and cause to be transmitted in interstate commerce writings, signs, signals pictures and sounds by means of wire communication in furtherance and execution of said scheme, to wit: the interstate wiring of $97,702 in proceeds from a loan secured by the Westminster property to an account controlled by the defendant at PNC bank.

In violation of Title 18, United States Code Section 1343.

## COUNT IV

The Grand Jury further charges that:

1. The allegations contained in Counts I through III are hereby realleged and incorporated by reference.

2. On or about November 25, 2009, in furtherance of the foregoing scheme to defraud and to obtain money and property, the defendant,

**JAY DUNLAP,**

did transmit and cause to be transmitted in interstate commerce writings, signs, signals pictures and sounds by means of wire communication in furtherance and execution of said scheme, to wit: the interstate wiring of $65,278.84 in proceeds from a loan secured by the Westminster property to an account controlled by R.S. and A.S. at U.S. Bank.

In violation of Title 18, United States Code Section 1343.

## COUNT V

The Grand Jury further charges that:

1. The allegations contained in Counts I through IV are hereby realleged and incorporated by reference.

2. On or about November 25, 2009, in furtherance of the foregoing scheme to defraud and to obtain money and property, the defendant,

**JAY DUNLAP,**

caused matter to wit: a check in the amount of $152,421.70 from Title Partners in Des Peres, Missouri to Excel Bank in Sedalia, Missouri, said check which was to pay off a loan secured by the Westminster property, to be sent and delivered by a private or commercial interstate carrier, to wit: FedEx.

In violation of Title 18, United States Code Section 1341.

A TRUE BILL

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
Thomas C. Albus, #96250
Assistant United States Attorney